CASE 23—ACTION FOR DAMAGES FOR INJURY TO LAND—MARCH 1.

# Illinois Central R. R. Co. v. Smith.

### APPEAL FROM OHIO CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

RAILROADS—CHANGE OF COURSE OF STREAM—MEASURE OF DAMAGES— OPINION EVIDENCE AS TO AMOUNT OF DAMAGES—ADMISSIBILITY OF EVIDENCE UNDER PLEADINGS.

Held:   1. The measure of damages for the injury to plaintiff's property from a change in the course of a stream in the construction of a railroad was the injury done to the soil, and the consequent diminution of the salable value of the land, the injury being a permanent one.

2. It was error to permit a witness to answer the question, "How much, in your opinion, was plaintiff's land damaged by this change in the stream?" The proper inquiry being as to the salable value of the land but for the injury, and then as to how much, if any, the salable value had been diminished by reason of the injury complained of.

3. Evidence as to the value of crops destroyed was inadmissible under the pleadings as formed.

H. P. TAYLOR, ATTORNEY FOR APPELLANT. PIRTLE & TRABUE OF COUNSEL.

### LIST OF POINTS AND AUTHORITIES.

1. Plaintiff fails to describe the land about which he is complaining so as to make the judgment res adjudicata. Hope v. Cason, 3 B. M., 544, Newman on Pleading, 446.

2. Appellant, railroad company, had the right to construct its railroad on its own land as is admitted in the petition. It had also

the right incidental to such construction, to dig the ditch on its own land so that it returned the water of the creek to its natural channel, and any incidental damage which appellee may have sustained is *damnum absque injuria.* Wilson v. N. N. & M. V. Co., 16 Ky. Law Rep., 262; E. & M. V. R. R. Co. v. Harlan, 36 L. R. A., 417; Stanton v. Norfolk, &c., R. Co., 109 N. C., 337; Walker v. Old Colony, &c., Co., 103 Mass., 10; (s. c., 4 Am. Rep., 509).

3. Unless such ditch be improperly **constructed** or be unnecessary for the protection of appellee, there is **no right** of action. 6 Lawson on Rights and Remedies, sec. 2942; 2 Ballard's Annuals, sec. 716; Johnson v. C. St. P., &c., 80 Wis., 641; (s. c., 50 N. W., 771); (s. c., 27 Am. St. Rep., 76); (14 L. R. A., 495).

4. There is no complaint that the ditch was improperly constructed by appellant's predecessor, and had there been such an allegation it would have shown a complaint against the predecessor and not against appellant, for appellant is not responsible for its predecessor's torts. The complaint against appellant is that it did not fill up the ditch.

5. But there was no right of action against the predecessor, and *a fortiori* none against appellant, the predecessor being actor and appellant merely passive. N. N. & M. V. Co. v. Wilson, 16 Ky. Law Rep., 262, concerning Horse Branch Creek, in the same neighborhood as the site of our controversy.

It seems to be the settled rule in this country that the owner of lands drained by a water course may change and control the natural flow of the surface water thereon, and by ditches or otherwise, accelerate the flow or increase the volume of water which reaches the stream; and if he does this in a reasonable use of his own premises, he exercises only a legal right, and incurs no liability to a lower proprietor. McCormack v. Horan, 81 N. Y., 86; 37 Am. Rep., 479.

Or, as expressed by Mr. Lawson, one may lawfully drain his land into a natural water course, even that by so doing, a lower proprietor is injured by the increased flow. 6 Lawson's Rights & Remedies, sec. 2942.

6. The right of a land owner to discharge surface water is not limited to drainage in the same manner as when the land is in a state of nature and unchanged by cultivation or improvement. But the owner may change the natural flow, and by ditches, accelerate the flow or increase the volume for the reasonable use of his premises although he injure a lower proprietor. McCormack v. Horan, 37 Am. Rep., 480.

7. A proprietor may, by ditches, discharge the water into a stream, where it naturally runs, whether for erecting buildings, for

Illinois Central R. R. Co. v. Smith.

agriculture, or constructing railroads. Waffle v. N. Y. C. R. Co., 13 Am. St. Rep., 468; see also E. & M. V. R. R. Co. v. Harland, L. R. A., 36, 417; Stanton v. Norfolk & C. R. Co., 109 N. C., 337; Walker v. Old Colony & N. R. Co., 103 Mass., 10 A. M. Rep., 509; Lawson's Rights, Remedies & Practice, vol. 6, 2942; Ballard's Annual, vol. 2, sec. 716.

8. The court admitted proof of damages to appellee's land which was not complained of in the petition, and the land was entirely different from that mentioned in the petition, being up-stream, and beyond the railroad fill from the land mentioned in the petition. By this error, the damages were increased largely.

9. If a nuisance had existed when appellant purchased the property, no recovery would have been possible, because,

(a) There was no notice to abate it. Gleason v. Schneider, 7 Ky. Law Rep., 834.

(b) It was not shown that the railroad company constructing the road built the ditch, as alleged.

(c) It was not shown that the ditch was on the right of way as alleged in the petition; and appellant's evidence proved the contrary; a peremptory instruction was accordingly proper.

10. The court erred in defining the measure of damages.

11. The verdict is contrary to the evidence and damages excessive.

12. The court permitted evidence, and by its instructions authorized damages assessed, which were not claimed, and are not recoverable unless specifically pleaded. Gould on Waters, (2d ed.), sec. 486; also note 8.

13. The finding of the jury was excessive. 2 Bibb, p. 33.

J. B. VICKERS AND S. P. ROBY, FOR APPELLEE.

1 It is shown by the evidence that plaintiff's land was flooded and washed, as the direct result of the manner in which the water from Middle Fork was directed and conveyed thereon by the artificial channel constructed by defendant's vendors and predecessors.

2. It is no exception to the rule that the party who makes the change in the natural flow of the waters does so by cutting an artificial channel on his own land, and thereby diverting the stream so as to run over his own land and to re-enter the original channel lower down the water course, as in the case at bar, if thereby the force and direction of the current of the stream, is so changed that it can not convey the waters away and they are thereby forced over on and does damage to the lower riparian owner.

3. The injury done to plaintiff's land is of a dual nature, one by washing away the soil whereby a permanent and lasting injury was inflicted; and the other by flooding merely, whereby the usufruct of the land was damaged.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellee recovered judgment on a verdict against appellant for damages to his land in the sum of $450. The damages complained of were occasioned, it is alleged, by the building of a railroad by the Owensboro, Falls of Rough & Green River Railroad Company; the latter company, in the construction of its road adjacent to appellee's lands, it is charged, having diverted the course, and so changed the channel, of a stream known as "Middle Fork of Adam's Fork of Rough Creek" as to cause the current of the stream to strike plaintiff's lands at a different angle and with more accelerated force than when in its former and natural channel. The effect was to cause the stream to leave its channel in time of flooded waters, and "cut across" plaintiff's field of about sixteen acres, washing away its soil and rendering it "unfit for cultivation." Appellant for two years before this suit had owned and operated the road in question, and, after notice, had failed, it is alleged, to abate the continuing nuisance caused by the acts stated. It is sought to make appellant liable for the two years only since it acquired the road.

Numerous errors are complained of, but we think it necessary to notice only two, the others appearing immaterial, if they are errors at all. The trial court seemed to have had some difficulty in determining the measure of damages in this case. In the course of the trial, in ruling on the admissibility of testimony on this point, the court announced that the criterion of recovery was the dimin-

ished rental value of the land as occasioned by the acts
complained of. Further along in the case the court ad-
mitted testimony showing not only the diminished rental
value of the land, but the value of crops damaged in the
two preceding years by this overflow; and, finally, as to the
extent plaintiff's land was permanently damaged by the
overflow,—that is, as to how much its selling value was
decreased by reason of the loss of the soil occasioned
by the overflows. From the facts shown in the record
we think the injury complained of was a permanent one,
and therefore the measure of damages under the plead-
ings was the injury done to the soil, and consequently
diminution of its salable value. On the trial, witnesses
were introduced by plaintiff, who were asked the ques-
tion, in substance, "How much, in your opinion, was plain-
tiff's land damaged by this change in the stream?" to
which the witness would answer, "$300," or such sum as
he may have fixed as the damages. Opinions are not ad-
missible as evidence in fixing damages, where the extent
of damages may be shown by direct and positive proof.
The word "opinion," as here used, is distinct from the
faculty of judgment based on observation and experience
and inspection of the premises in suit. The charac-
ter of testimony discussed is open to the further objec-
tion that it constitutes the witness sole judge of the meas-
ure of damages in the case. For example, this case seemed
to puzzle the lawyers engaged, and for a time to have
not been been fully satisfactory to the learned trial judge
in determining what was the correct measure of recovery.
A witness asked the mere question, "How much, in your
opinion, was A. damaged by the overflowing of his lands?"
at a certain time, left the witness to determine a meas-
ure of damage, and to apply it. In thus determining the

Illinois Central R. R. Co. v. Smith.

measure of damages, the witness exercises the functions
of the court, and, in applying it, the functions of the jury.
Besides, neither the jury, nor the court, nor counsel inter-
ested could know what measure the witness adopted, and
therefore would not know what just value to give his
opinion, even had it been competent as testimony. In
such a case we think the court should determine the cri-
terion of recovery, and control the evidence of damage
by it. If the criterion is the diminished rental value of
the land, then the question to the witness is, "What was
the rental value of the land but for the injury complained
of?" and then, "How much, if any, had it been impaired
by reason of the injury complained of?" If the criterion
is the diminished salable value of the land, then the in-
quiry is, what was its salable value but for the injury, and
how much, if any, has its salable value been diminished
by reason of the injury complained of? The admission of
the character of testimony above referred to was error.
For the reasons indicated, the judgment is reversed, and
the cause remanded, with directions to set aside the
judgment and verdict, and to grant appellant a new trial.
Upon a return of the cause the court should allow or com-
pel a reformation of the pleadings so as to fairly present
the question of the alleged injury, designating so as it may
be identified the particular tract of land alleged to have
been damaged, and the character of the damage claimed
to have been sustained. As the pleadings were formed on
the other trial, evidence as to value of crops destroyed
by the overflow was inadmissible.