S. W. MAYNARD ET AL., APPELLANTS, V. NEMAHA VALLEY
DRAINAGE DISTRICT, APPELLEE.

FILED NOVEMBER 12, 1913.    No. 17,387.

1. Eminent Domain: DRAINAGE: REMOVAL OF DAM: MEASURE OF DAM-
AGES. The proper measure of damages on appeal from condem-
nation proceedings to remove a mill-dam is the difference between
the value of the mill property before the removal of the dam and
loss of the water-power and its value after the removal has taken
place.

2. ——: ——: ——: ——: PROSPECTIVE PROFITS. Prospective
profits which may in the future be derived from the use of the
water-power for the development of electricity are too remote
and speculative to be taken as elements of damage, where there is
no proof of a present and immediate intention and purpose to
make such development.

APPEAL from the district court for Nemaha county:
LEANDER M. PEMBERTON, JUDGE.   Affirmed.

S. P. Davidson and William G. Rutledge, for appel-
lants.

Kelligar & Ferneau, contra.

LETTON, J.

This is an appeal from condemnation proceedings
brought to remove a mill-dam in the Nemaha river which
was appurtenant to a small flouring mill of appellants, for
the reason that the dam is so located that it obstructs the
main channel of the proposed ditch improvement.   Ap-
praisers were appointed by the county court.   They ap-
praised the damages occasioned by the removal of the
dam at $3,500.   From this appraisement an appeal was
taken to the district court, where, after a trial, judgment
was rendered for the same sum.

At the trial a number of witnesses were called by ap-
pellant to testify as to the value of the dam.   One Beards-
ley, an expert hydraulic engineer, testified that the water-

power, if it was fully developed for the generation of electric power and connections made with various towns in the vicinity, was actually worth $135,000. Another engineer, after testifying to the size of the dam, the extent of the drainage area of the stream, and the amount of power the dam would develop, was asked what the dam was worth. An objection was interposed that the witness had not shown himself competent to answer, and that the question was irrelevant, immaterial and incompetent. The objection was sustained. Appellants then offered to prove that the value of the dam, estimated from the amount of power it produced at the normal flow of the river and with the development existing before its removal, was $35,000. This testimony was excluded. Appellants also offered testimony to show that the additional cost of running the mill by steam power over the cost of running it by water-power for each year would not be less than $1,425, as affording a basis upon which to estimate the value of the dam. The exclusion of this evidence is the chief complaint of appellants.

The determining question is what is the proper measure of damages for the removal of a dam which is appurtenant to a flouring mill. The rule which seems to have been adopted by most courts is the difference between the market value of the property before the power is destroyed and afterwards. Mr. Farnham, in speaking of the measure of damages for the diversion of waters generally, says: "If the diversion is permanent and cannot be suppressed, the measure of damages is the difference in value of the property immediately before and immediately after the diversion of the water is effected, or the value of the land with the water flowing to it and its value without such flow." 2 Farnham, Waters, sec. 510. With reference to the destruction of a water-power, the supreme court of errors of New Jersey lays down the rule as follows: "In ascertaining just compensation for the diversion of water from a mill, the difference between the market value of the mill before the diversion and its market value afterwards

is usually a simpler·and safer criterion than estimates of the probable cost of producing by steam at the mill the power which the diverted water would supply, and than estimates of the probable value of the water-power at the mill, based on the rental value of power at other places more or less distant and dissimilar." *Sparks Mfg. Co. v. Newton,* 60 N. J. Eq. 399. This seems to be the general rule. *Lee v. Springfield Water Co.,* 176 Pa. St. 223; *Illinois C. R. Co. v. Smith,* 110 Ky. 203; *City of Syracuse v. Stacey,* 169 N. Y. 231, affirming 45 N. Y. App. Div. 249; *Illinois C. R. Co. v. Village of Lostant,* 167 Ill. 85. "Proof must be limited to showing the present condition of the property and the uses to which it is naturally adapted. It is not competent for the owner to show to what use he intended to put the property, nor what plans he had for its improvement, nor the probable future use of the property. Nothing can be allowed for damages to an intended use." 2 Lewis, Eminent Domain (3d ed.) sec. 709 (480).

It seems clear that an estimate of the value of the property based upon or considering as an element of value what it would be worth after costly and valuable improvements and additions had been made to it, or upon a use not contemplated by its owner in the near future, is so speculative and remote and depends so much upon other factors and contingencies that it really affords no criterion of its present value. *Illinois C. R. Co. v. Chicago,* 169 Ill. 329. It is evident that the damages cannot be more than the value of the whole property before it is interfered with by the improvement, and cannot be less than the depreciation in money value after the improvement has been made. The difference in the value of the whole property before and after the dam was taken out was the measure of damages adopted by the trial court, and this we believe to be the proper rule.

The evidence shows that the erosion of the fertile soil of the Nemaha valley and its consequent deposit in the bed of the stream has seriously interfered with the capacity of the river to furnish water-power. This fact was

taken into consideration by the witnesses for the appellee and by the court in estimating the value of the property before and after the destruction of the dam.

We find no error in the ruling of the court upon the points complained of. The judgment is supported by the evidence, and is therefore

AFFIRMED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.