LEO B. STUHR, APPELLEE, V. CITY OF GRAND ISLAND, APPELLANT.

FILED JUNE 10, 1932. No. 28131.

*Arthur G. Abbott, Arthur C. Mayer* and *H. G. Wellensiek,* for appellant.

*Cleary, Suhr & Davis, contra.*

Heard before ROSE, GOOD and EBERLY, JJ., and CARTER and CHASE, District Judges.

CHASE, District Judge.

This is a condemnation proceeding wherein the city of Grand Island has appropriated, under its power of eminent domain, a strip of land belonging to the plaintiff for sewer purposes. The case was tried in the district court to a jury, resulting in a verdict for the plaintiff in the sum of $1,000 for the four acres of land actually appropriated, and $7,500 as special damages to the remainder of the tract. From the judgment on the verdict and the overruling of the motion for new trial the city presents the case to this court for review, assigning numerous errors in support of its contention, among which is that the court erred in the admission of evidence offered by appellee over objections of the appellant. Our disposition of the case will be confined to a consideration of this proposition.

It appears that the plaintiff is the owner of the west half of the northwest quarter of section 14; the east half of the northeast quarter of section 15; also ten acres in the northeast corner of the northeast quarter of the southeast quarter of section 15; and one-half acre along the north line of the northwest quarter of the southwest quarter of section 14, all in township 11 north, range 9 west of the sixth principal meridian, being farm land located just northeast of the city of Grand Island. By these proceedings the city condemned a strip of land 66 feet in width, running east and west along the south line of the land, which might be termed plaintiff's quarter section, the south line of said strip being the south line of said quarter, and the whole 66 feet being taken off plaintiff's land; and ten and one-half acres belonging to plaintiff are on the south side of the ditch. The sewer is an

open ditch running across plaintiff's land, and other lands, east to the Platte river. It is 34 feet in width at the top, 7 feet in depth, and 6 feet in width at the bottom. Four acres of plaintiff's land is actually taken by the right of way of this ditch. The land thus described has for many years been used for agriculture and stock-feeding purposes. The improvements consist of a house, two barns, granary, poultry house, two feed houses, cattle shed, hog shed and other small outbuildings, together with corrals, fences, well and windmill. The house, two pumps, windmill, some fruit and ornamental trees are located upon the 66 foot strip actually appropriated by the city.

In awarding a property owner compensation and damages for real estate appropriated under condemnation proceedings, the rule seems to be that the damages are confined to the fair market value of the land actually appropriated, and in addition thereto the difference between the fair market value of the balance of the tract as it was at the time of said appropriation and what it is immediately after the improvement is made.

The evidence discloses that four acres of land have actually been appropriated by the appellant. The value of the land actually appropriated, the cost of removal of any buildings or improvements, the destruction or damage to trees or other immovable property, and any diminution in the present market value of the land are proper elements of damage.

It may be said at the outset that much testimony has been introduced by the appellee involving prospective, remote and speculative damages which cannot be regarded as true elements in cases of this character. A number of witnesses testified on behalf of appellee as to what, in their opinion, the difference in the value of the plaintiff's land was before and after the appropriation. It appears conclusively from the record that the land in question has never been used for anything but agricultural purposes. In the opinion of the witnesses the difference in the value of the land unappropriated before and after the taking

varies from $50 to $150 an acre. None of these witnesses are able to give a substantial reason why, in their opinion, this land would suffer a depreciation because of the sewer in the amount of $150 an acre. The cost of removing the buildings and relocating them is placed by one witness at $3,500 and by another at $1,200. Evidence is introduced over the objection of the appellant to the effect that the land generally in the Platte river valley is underlaid with gravel. We find no evidence where any tests have been made upon the land in question as to whether this particular land contains such deposits, with the possible exception of the testimony of plaintiff, who states that a test was made and gravel was found, but there is no evidence as to whether it was of a character or quantity suitable for commercial uses. There was also evidence permitted to go to the jury as to the availability of this land for railway trackage in reaching the gravel deposits generally in that vicinity in the event that the gravel should later be desired for commercial uses; the claim being that such facts and such conditions decreased the present market value of the tract generally. The court permitted witnesses to testify further of a potential value which this land might have in the future for munic-ipal subdivision purposes. All of these things are entire-ly too remote, speculative and uncertain to be logically said to affect the present market value of the land un-appropriated. To allow such testimony to go to the jury, as was permitted in this case, is erroneous.

A certain branch of the instant case seems to have been before this court on a prior occasion. The district court for Hall county, in an appropriate proceeding, en-tered an order of injunction against the appellant, before the prosecution of the work, perpetually enjoining appel-lant from using this land to construct an open sewer thereon until it had completed its disposal plant so that the effluvia from said plant would be clear and odorless, nonputrescible, and in no way becoming a nuisance. That case was appealed to this court and affirmed. *Stuhr v.*

*City of Grand Island,* 120 Neb. 491. Notwithstanding the question of committing a nuisance seems to have been foreclosed in that case, the trial court in this case permitted witnesses to testify that this sewer would exhale noxious and offensive odors to the extent of becoming a nuisance and endangering the health of persons living in that vicinity. In view of the present state of the record, any evidence offered at the trial of this case under a claim that the present improvement would diminish the value of the land unappropriated by making the same uninhabitable or unfit for habitation was incompetent and improper and the jury should not have been permitted to hear testimony in support of such an element of damage.

We think the consideration of the jury should have been confined to the value of the land actually appropriated and in addition thereto special damages to the remainder of the tract by reason of the appropriation, which would include damages caused by the removal of the buildings, fences, trees and other improvements, and also any additional damage occasioned by the segregation of certain parts of the land from other parts, and any other element that might affect its present market value. Damages that are too remote, contingent and speculative to affect the present market value of the land cannot and must not be considered.

This court held in *Maynard v. Nemaha Valley Drainage District,* 94 Neb. 610, that prospective damages which in the future may be derived from waterpower, or in the development of electricity, are entirely too remote and speculative to be taken into account as special damages, especially where there was no proof of a present and immediate intent and purpose to make such development. "Proof must be limited to showing the present condition of the property and the uses to which it is naturally adapted. It is not competent for the owner to show to what use he intended to put the property, nor what plans he had for its improvement, nor the probable future use of the property. Nothing can be allowed for

damages to an intended use." 2 Lewis, Eminent Domain (3d ed.) sec. 709. What real estate would be worth after costly and valuable improvements and additions had been made to it, or upon a use not contemplated by its owner in the near future, is so speculative and remote and depends so much on other factors and contingencies that it affords no present criterion of its present market value and cannot be considered as evidence affecting the same. *Illinois C. R. Co. v. City of Chicago,* 169 Ill. 329.

In a very early case *In the Matter of Furman Street,* 17 Wend. (N. Y.) 649, 669, the court made use of the following language: "However much the necessity for disarranging the plans of any individual may be regretted, the great principle upon which public improvements are to be effected must be substantially the same in all cases. All classes and conditions of men hold their property subject to the paramount claims of the state; and when it is taken for public purposes, and the question of compensation is presented, the only proper inquiry is, what is its value? The question is not, what estimate does the owner place upon it, but what is its real worth, in the judgment of honest, competent, and disinterested men? * * * What price will it bring in the market? That is the proper inquiry in a proceeding of this kind. As between individuals, the owner may demand any price, however exorbitant, for his property; but when it is taken for public purposes he can only demand its real value."

Reason would dictate that a jury under circumstances such as are indicated by this record would have been misled in arriving at a proper estimate of the damages sustained. The trial court committed error in refusing to limit the jury to the proper field of inquiry in determining the issues of fact involved.

The judgment of the district court is therefore reversed and the cause remanded.

REVERSED.