EL PUEBLO DE PUERTO RICO, representado por su GOBERNADOR, demandante, apelado y apelante, *v.* MERCEDES SALDAÑA Y QUINTERO, ISABEL SALDAÑA ORTIZ DE ZARATE VDA. DE GARCÍA, ROSA MARÍA y VÍCTOR MANUEL GARCÍA SALDAÑA, MARÍA OTERO TORRES y MONSEÑOR JAMES P. DAVIS, OBISPO DE LA DIÓCESIS DE SAN JUAN, demandados, apelante la primera y apelados.

Núm. 9726.—*Sometido:* Diciembre 8, 1948. *Resuelto:* Marzo 25, 1949.

712

*G. Rivera Cestero* y *A. Castro Fernández,* abogados de la apelante y apelada; *Hon. Procurador General Vicente Géigel Polanco (Luis Negrón Fernández, Ex Procurador General,* en el alegato) y *Antonio Riera,* abogados del apelado y apelante.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

A requerimiento de la Autoridad de Tierras de Puerto Rico, El Pueblo de Puerto Rico, representado por el Gobernador, inició esté procedimiento de expropiación forzosa el 17 de septiembre de 1946 ante la Corte de Distrito de Baya-

món([1]) y depositó en dicha Corte la suma de $68,716.62 como la compensación justa y razonable de una finca de 209.4125 cuerdas situadas en Toa Baja y la cual está circundada por otras fincas de la Autoridad de Tierras. Se alegó en la demanda que la finca pertenecía a varios demandados que se especificaron y que se interesaba la expropiación para llevar a cabo los fines y propósitos de la vigente Ley de Tierras de Puerto Rico, a saber:

"(a) Establecimiento de fincas de beneficio proporcional cuya extensión fluctúe entre 100 y 500 acres, para dedicarlas principalmente a la siembra y cultivo de caña de azúcar, en armonía con las disposiciones del Título IV de la Ley de Tierras precedentemente invocada;

"(b) Distribución y cesión de tierras a un número de 'agregados' a razón de una parcela no menor de una cuarta parte de cuerda ni mayor de tres cuerdas por familia, en la cual puedan erigir dichos 'agregados' sus viviendas en armonía con las disposiciones del Título V de la Ley de Tierras precedentemente invocada;

"(c) Distribución y operación de tierras en fincas individuales cuya cabida fluctúe entre 5 y 25 acres en armonía con las disposiciones del artículo 25 y siguientes de la Ley de Tierras precedentemente invocada."

Se alegó, por último, que los propósitos enunciados son de utilidad pública y la adquisición de la referida propiedad para la Autoridad es una necesidad también pública de acuerdo con el artículo 11(a) de la Ley de Tierras, según enmendado el 20 de noviembre de 1942.

A la demanda se acompañaron una Declaración de Adquisición, firmada por el Gobernador de Puerto Rico, y una Petición de Adquisición, firmada por el Procurador General de Puerto Rico, solicitando que de acuerdo con la sección 5(a) de la Ley sobre Expropiación Forzosa (Leyes de 1903, pag. 404), según enmendada por la Ley núm. 19 de 30 de noviembre de 1942 ((2) pág. 83), se ordenara por la corte

---

([1]) El Tribunal de Expropiaciones de Puerto Rico no fué creado hasta el año 1948 por la Ley núm. 223 aprobada el 15 de mayo de 1948 ((1) pág. 775).

que el título de dominio sobre la propiedad objeto del procedimiento había quedado investido en la Autoridad de Tierras de Puerto Rico desde la radicación de la declaración, y así lo hizo la corte por resolución de la misma fecha.

Tres de los demandados comparecieron alegando ser dueños de un condominio de cinco dieciseisavas partes de la propiedad y solicitaron se les entregara la parte proporcional que les correspondía de la suma depositada, sin perjuicio de sus derechos a reclamar la compensación que creyeran justa y razonable y así lo ordenó la corte.

La otra demandada, Mercedes Saldaña y Quintero, radicó una moción para desestimar la demanda y al contestar la misma levantó varias cuestiones legales atacando la procedencia del recurso y la constitucionalidad de las leyes bajo las cuales se instituyó.

La corte inferior declaró sin lugar la moción para desestimar y celebrado el juicio correspondiente dictó sentencia declarando con lugar la demanda y condenó al demandante a pagar a los demandados la suma de $94,235.62 como valor justo y razonable de la propiedad expropiada, deduciéndose de dicha suma los $68,716.62 que había depositado el demandante, o sea que el demandante sólo tendrá que satisfacer la cantidad de $25,519 más intereses al tipo de 6 por ciento anual sobre esta última cantidad desde la radicación de la demanda en 17 de septiembre de 1946 hasta la fecha de su pago. Solicitó la demandada Mercedes Saldaña y Quintero la reconsideración de la sentencia y su moción fué declarada sin lugar.

Tanto el demandante como la demandada Mercedes Saldaño y Quintero apelaron de la sentencia. En su recurso el demandante se limita a imputar un error a la corte sentenciadora, o sea al apreciar la prueba y resolver que el justo valor de la finca expropiada era el de $94,235.62 y no el de $68,716.62. Como la demandada en su recurso, entre otros errores alega que aun la compensación concedida por la corte

es inadecuada, dejamos esos errores para considerarlos conjuntamente y pasaremos a considerar los demás errores señalados por la demandada apelante.

Estos son al efecto de que la Corte inferior erró al declarar sin lugar: (1) la moción para desestimar la demanda y (2) las defensas legales alegadas por la demandada en su contestación.

■ Arguye en primer término la apelante que la corte inferior carecía de jurisdicción para decretar la expropiación por no haberse hecho una determinación administrativa al efecto de que los terrenos objeto del procedimiento fueran necesarios o convenientes para los fines de la Autoridad de Tierras.

Las alegaciones contenidas en la demanda, anteriormente citadas en esta opinión, exponen a nuestro juicio, hechos suficientes para constituir una causa de acción y conferir jurisdicción a la corte. Artículos 11 y 11 (a) de la Ley de Tierras de Puerto Rico; *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F.2d 316 (*certiorari* denegado el 12 de noviembre de 1946); *Old Dominion Land Company* v. *United States,* 269 U.S. 55 70 L. ed. 162; *United States* v. *40.75 Acres of Land, etc.,* 76 F. Supp. 239.

El mero hecho de radicarse la petición por El Pueblo de Puerto Rico a requerimiento de la Autoridad de Tierras con las alegaciones anteriormente expuestas, demuestra que los terrenos eran necesarios o convenientes para los fines de dicha Autoridad. Como se dijo en el caso de *Old Dominion Land Company* v. *United States,* supra:

" . . . . . . . .

"Alguna cuestión surge en cuanto a si una carta del Secretario de la Guerra dirigida al Procurador General autorizó suficientemente los presentes procedimientos al demostrar que en su opinión eran necesarios o convenientes al Gobierno el iniciarlos. La Ley del 1º. de agosto de 1888, c. 728; 25 Stat. 357, [40 U.S.C.A. sec. 257], permite al Secretario adquirir por expropiación terrenos para fines públicos 'cuando en su opinión sea necesario o conveniente al Go-

bierno el hacerlo'; le da jurisdicción a las cortes de los Estados Unidos, e impone el deber al Procurador General a toda petición de tal funcionario el obtener que el procedimiento sea comenzado. No vemos ningún requisito de que el Secretario tenga que ir más allá sino hacer la petición al Procurador General. . . .''

El artículo 11 de la Ley de Tierras dispone que a solicitud de la Autoridad, el Gobierno Insular tendrá facultad para adquirir a nombre de la Autoridad por expropiación forzosa ''. . . . título de cualquier propiedad inmueble o interés sobre la misma que fuera necesario o conveniente para los fines de la Autoridad. . .'' y alegándose en la demanda cuáles son esos fines, la corte tenía jurisdicción.

Sostiene además la apelante que de las alegaciones no aparece que las tierras que se pretende expropiar sean para un uso o propósito público y que no siendo la apelante una corporación, sociedad u otra instrumentalidad jurídica de vida perpetua, y no teniendo o poseyendo más de 500 acres de terreno, la presente expropiación no constituye un uso o propósito público y viola una de las disposiciones de la Ley de Tierras al efecto de que la Autoridad se crea para ''asegurar a los individuos la conservación de sus tierras.''

Ya hemos resuelto en el caso de *McCormick* v. *Marrero, Juez,* 64 D.P.R. 260, 267, en el cual la finca que se trataba de expropiar por El Pueblo de Puerto Rico para beneficio y uso de la Autoridad de Tierras con el fin de distribuirla entre un número de agregados, sólo contaba de 129.33 cuerdas, que:

''. . . . . . . .

''La Legislatura tiene amplia discreción para determinar qué es lo que constituye un fin público y para tomar aquellas medidas que a su juicio promuevan el bienestar de la comunidad. No es función de los tribunales la de expresar opinión sobre la sabiduría o conveniencia de una medida legislativa. Si ésta contiene elementos de beneficio público y el propósito que se trata de realizar es de carácter público, la cuestión en cuanto al beneficio que haya de recibir el público debe ser resuelta por la Legislatura y no por los tribunales. La presunción en favor del fin público que se propone alcan-

zar, es más fuerte cuando la expropiación se hace a nombre del gobierno y no por una corporación privada. [Citas.]

" . . . . . . .

Basta leer las disposiciones pertinentes de nuestra Ley de Tierras,. de acuerdo con las cuales se trata de expropiar la finca de los peticionarios, para convencernos de que el fin a que habrá de dedicarse la finca objeto de la expropiación es uno de carácter público y que a nuestro juicio habrá de contribuir · grandemente a levantar el standard de vida de nuestras clases trabajadoras. . . ."

Arguye la apelante que el caso de *McCormick* no es aplicable al de autos porque en él no se levantó la cuestión de que la expropiación era contraria a uno de los propósitos expuestos en la Ley de Tierras. Es cierto que dicha cuestión no fué suscitada en dicho caso pero no creemos que de haberlo sido el resultado hubiera sido distinto. El hecho de que el artículo 7 de la Ley de Tierras, según quedó enmendado por la Ley núm. 197 aprobada el 11 de mayo de 1942 (Leyes 1942, pág. 997),(²) exponga entre los fines para los cuales se creó la Autoridad el de "asegurar a los individuos la conservación de sus tierras" no significa que la Autoridad no pueda adquirir, si El Pueblo de Puerto Rico es quien inicia el procedimiento de expropiación, tierras que pertenezcan a individuos particulares y no a corporaciones o sociedades, para ser utilizadas en alguno o todos los fines públi-

_____
(²)Dicho artículo dispone:

"Artículo 7.—La Autoridad se crea con el fin de llevar a cabo la política agraria de El Pueblo de Puerto Rico, según se determina en esta Ley, y para realizar los actos necesarios para poner término al latifundio corporativo existente en esta Isla, impedir su reaparición en el futuro, asegurar a los individuos la conservación de sus tierras, ayudar a la formación de nuevos propietarios, facilitar el aprovechamiento de las tierras para el mayor bien público bajo planes de producción eficiente y económica, proveer medios para que los agregados y moradores de arrabales puedan adquirir predios de terrenos en los cuales enclavar sus viviendas y para efectuar todos los actos conducentes al más científico, económico y eficiente disfrute de las tierras por el pueblo de Puerto Rico; *Disponiéndose,* que no se entenderá que ninguna de las disposiciones de esta Ley limita el derecho de la Autoridad de Tierras de Puerto Rico o de las organizaciones, entidades, o agentes creados o autorizados por ella para llevar a cabo los fines mencionados en el párrafo anterior a tener, controlar, poseer, usar y desarrollar terrenos agrícolas con una superficie mayor de 500 acres."

cos especificados en la Ley. Implícitamente esta cuestión fué resuelta en una apelación anterior en este caso, *Pueblo v. Saldaña*, 68 D.P.R. 936, 938, en el cual resolvimos que el poder delegado a la Autoridad para adquirir por expropiación forzosa estaba limitado, por el artículo 14 de la Ley de Tierras (según enmendado por la Ley núm. 8 de 29 de mayo de 1945) a casos:

" '. . . contra personas jurídicas que, por poseer más de quinientos acres, estén violando las disposiciones de esta Ley, y no se ejercitarán contra las personas naturales tales poderes de expropiación forzosa a menos que las tierras en cuestión hayan pertenecido en 10 de febrero de 1941, a alguna persona jurídica, según éstas se definen en el mencionado Título Tercero.' "

Y en su consecuencia que:

"
. . . . . . . .

"Están, pues, limitados expresamente los casos en que la Autoridad de Tierras de Puerto Rico puede, por sí, ejercitar una acción de expropiación forzosa. En todos los demás, y en ellos está incluído el de autos, si dicha Autoridad desea adquirir título a cualquier propiedad inmueble o interés sobre la misma, bien por compra o por el procedimiento de expropiación, debe cumplir con el artículo 11 de la Ley de Tierras(3) y solicitar que la acción se inste a nombre del Gobierno Insular, o sea de El Pueblo de Puerto Rico."

Es cierto que según se dice en la Exposición de Motivos de la Ley de Tierras el propósito esencial de la Ley es:

". . . poner término al latifundio corporativo y a toda gran concentración de tierras en manos de entidades jurídicamente estructuradas en tal forma que tiendan a perpetuarse. . ."

pero también se hace constar en dicha Exposición que:

"
. . . . . . . .

" (3)El artículo 11 dispone que 'A solicitud de la Autoridad, el Gobierno Insular tendrá facultad para adquirir, a nombre de la Autoridad, por compra o por expropiación forzosa, en la forma que proveen esta Ley y las leyes insulares sobre expropiación forzosa, título de cualquier propiedad inmueble o interés sobre la misma que fuere necesario o conveniente para los fines de la Autoridad, y ésta pagará por toda la referida propiedad inmueble. La facultad que por la presente se confiere no limitará ni restringirá la facultad de la propia Autoridad para adquirir propiedades inmuebles por compra o expropiación forzosa.' "

"No estaría completa esta política pública fundamental si no estuviera acompañada, como corolario germano a su naturaleza y a su alcance, del propósito, de proveer que en aquellos terrenos donde, por razones naturales y económicas, la división de la tierra no fuese aconsejable en términos de eficiencia, pueda sin embargo producirse la mayor difusión posible de los beneficios económicos de la tierra, llegando éstos a levantar sustancialmente el nivel de vida del mayor número posible de familias; y es con vistas a esta modalidad del propósito legislativo que se considera indispensable proveer para la creación de Fincas de Beneficio Proporcional en las que la difusión de la riqueza pueda ser alcanzada, hasta donde la eficiencia así lo aconseje, sin la división de la tierra. También es parte integrante del propósito moral, de dignidad y libertad económicas encarnado en la política pública de la Legislatura, el facilitar los medios para que desaparezca de Puerto Rico la clase de 'agregados', o sea de trabajadores agrícolas esclavizados por el hecho de no ser dueños ni siquiera del pedazo de terreno donde tienen sus hogares; y a tal efecto la Legislatura declara el derecho fundamental humano de todos los seres que viven exclusivamente de trabajar la tierra, de ser por lo menos dueños de un pedazo de esa tierra que les sirva para levantar sobre él, con la entera inviolabilidad que garantizan las leyes al hogar del ciudadano, su propio hogar, libertándolo así de coacciones y dejándolo libre para vender su trabajo en negociación justa y equitativa."

Si El Pueblo de Puerto Rico se convence de que los fines que persigue la Autoridad de Tierras al solicitar la expropiación forzosa de terrenos pertenecientes a personas particulares en extensión menor de quinientos acres, son convenientes y necesarios para los fines públicos expresados en la Ley, puede iniciar dicho procedimiento. El poder de expropiación del estado en estos casos no está limitado a casos en que el demandado sea una corporación, sociedad, u otra entidad jurídica que posea tierras en violación de la ley. Sencillamente está ejecutando su poder inherente de expropiar para fines públicos previa la indemnización correspondiente.

De manera que el caso de *McCormick* v. *Marrero, Juez,* supra, es aplicable al de autos, y también el de *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F.2d 316,

(C.C.A. 1, 1946), *certiorari* denegado el 12 de noviembre de 1946, en el cual, si bien se trataba de la expropiación de terrenos situados en la Isla de Vieques para aliviar la situación económica de dicha isla, según se expuso en la Ley núm. 90 aprobada el 11 de mayo de 1944 (pág. 197), dicho procedimiento se llevó a efecto de acuerdo con las disposiciones de la Ley de Tierras, supra, alegándose en la petición por El Pueblo de Puerto Rico los fines públicos a que serían dedicados dichos terrenos, los mismos que en la presente acción se alegan, y que han sido copiados anteriormente. A ese efecto dijo la Corte de Circuito, a la pág. 320:

". . . La cuestión fundamental a resolver es si de acuerdo con las alegaciones puede decirse que los terrenos de la apelada se desean expropiar para un uso público. Y esto requiere la consideración de la naturaleza como pública o privada de cuatro posibles usos de los cuáles los terrenos aquí en controversia pueden, si adquiridos, ser dedicados, a saber, *los tres usos específicos enumerados en la Ley de Tierras* y además el uso más general permitido por la Ley de Vieques. . . ." (Bastardillas nuestras.)

No fué, por tanto, como sostiene la apelante, la Ley de Vieques la única interpretada en dicho caso. Resolviendo la cuestión fundamental expuesta, la corte se expresó, a la pág. 323, en esta forma:

". . . . . . . .

"Los cuatro usos contemplados para los terrenos antes enumerados están íntimamente relacionados. Cada uso forma parte de un programa comprensivo de reforma social y económica. Así pues no vemos base alguna para analizar cada propuesto uso separadamente. En su lugar consideramos que toda la legislación debe ser considerada 'como un solo esfuerzo integrado,' *United States ex rel. Tennessee Valley Authority* v. *Welch*, 66 S. Ct. 718, para mejorar las condiciones en la isla, y así visto creemos la aprobación de las leyes está dentro del poder de la Legislatura Insular."

Y a la pág. 325:

". . . Pero bastante hemos dicho para indicar que tanto la creencia de la Legislatura de Puerto Rico de que existe un serio pro-

blema económico y social no fué arbitraria y que el programa para proveer, no sólo hogares seguros y fincas de beneficio proporcional para agregados y fincas de subsistencia para agricultores más aptos, *en la Isla de Puerto Rico,* sino en adición a lo anterior, el proveer para la renovación de la molienda de caña de azúcar y el desarrollo de la industria licorera en la Isla de Vieques, *envolvían medios razonablemente calculados para afrontar estos problemas.''* (Bastardillas nuestras.)

No estamos, por tanto, aceptando el fíat legislativo de que los fines expuestos en la Ley de Tierras, son de carácter público, sino que, tanto esta Corte como la del Primer Circuito hemos resuelto afirmativamente, que El Pueblo de Puerto Rico, al hacer uso del poder de expropiación para los fines expuestos en la Ley de Tierras, no viola la disposición constitucional del debido procedimiento de ley. Al igual que la Corte de Circuito, no creemos necesario tratar de resolver ''. . . la cuestión sobre la cual la Corte Suprema aparentemente estaba dividida en *United States ex rel. Tennessee Valley Authority* v. *Welch et al.,* 66 S. Ct. 715, es decir, si una decisión legislativa de que una expropiación es para un fin público está sujeta a revisión judicial. . . porque aun cuando sea una dentro de nuestra competencia, creemos que la expropiación de que aquí se trata no viola el 'debido procedimiento.' '' (Págs. 322–3, caso citado.)

No se cometió, pues, el error señalado.

■ Tanto el demandante en su recurso, como la demandada en el suyo, imputan error a la corte sentenciadora al apreciar la prueba y fijar el valor de la finca expropiada en los siguientes términos:

''. . . . . . . .''

''Según los testigos de la parte demandada esta finca tiene un valor no menor de $700 la cuerda de terreno. Según los testigos del demandante esta finca tiene un valor de $328 la cuerda.

''En varias cosas estuvieron conformes los testigos de ambas partes, y ellas son las siguientes:

''*a*—La finca es llana; *b*—está bien situada, cercana a la central azucarera y con camino para llegar a ella, así como la atraviesa una

vía férrea; c—el terreno es propio para la siembra de caña de azúcar y produce bastante buen tonelaje de caña.

"Para la Corte y por el resultado de la prueba se ha comprobado lo siguiente:

"1.—La finca objeto de esta expropiación es de bastante buena calidad a los fines a que se dedica;

"2.—La finca tiene una cabida de 209.4125 cuerdas;

"3.—Tiene un valor esta finca por cuerda de $450, por lo que es lo mismo, estima la Corte que esta finca tiene un valor justo y razonable de $94,235.62."

En el caso de autos la corte inferior no tuvo prueba sobre ventas voluntarias de terrenos similares a los de la apelante que reflejasen los precios obtenidos en ventas recientes a la fecha de la expropiación. De la evidencia presentada por el demandante tenemos la declaración del Sr. Rafael Méndez Roig, Ingeniero Industrial y Jefe de una sección de Autoridad de Tierras, quien hizo un estudio de la finca, calculando el valor por cuerda de cada tipo de suelo a base de productividad, considerando también lo que la finca producía en rentas a sus antiguos propietarios, localización, vías de comunicación, precipitación fluvial, etc., llegando a la conclusión de que el valor justo y razonable era de $328 por cuerda.

Francisco López Domínguez, testigo de la demandada, Administrador de la Central Monserrate, declaró que conoce la finca; que por la experiencia que ha tenido con terrenos de ese tipo en la costa norte de Puerto Rico, la producción de esta finca debe dar un promedio normal entre retoños, primavera y gran cultura, de 40 toneladas, que el valor en el mercado de los terrenos expropiados a su juicio es de $700 a $800 por cuerda. El Sr. Mariano Maris, graduado de agrónomo en 1921, por 16 años fué inspector de la costa norte del Departamento de Agricultura, quien inspeccionó la finca "Ortega", consideró los tipos de suelo, distancia de la central, topografía, cercanía de San Juan, capacidad productiva de la finca, opinó que la finca tenía un valor de $700 la cuerda. Antes de la expropiación, la finca estaba arrendada a la

Autoridad de Tierras por canon mensual neto de $400 pagando la arrendataria las contribuciones. También se desprende de la evidencia que la finca "Ortega" está en Toa Baja; que es toda llana, que está cerca de una central azucarera, que tiene sus caminos afirmados y que ha estado siempre dedicada al cultivo de la caña.

En el caso de *Pueblo* v. *García,* 66 D.P.R. 504, 510, esta corte se expresó de la manera siguiente:

" . . . . . . . . .

"La experiencia demuestra que los testigos más competentes frecuentemente difieren mucho en sus opiniones en cuanto al valor de la misma propiedad. Como se dijo en el caso de *Welch* v. *Tennessee Valley Authority,* 108 F.2d 95 (C.C.A. 6th, 1939), no existe una medida que pueda aplicarse rígida y uniformemente para determinar el valor de tierras y cada caso debe resolverse a la luz de sus propios hechos."

De acuerdo con los hechos de este caso no creemos que la compensación concedida por la corte inferior sea excesiva como sostiene el demandante ni insuficiente como alega la demandada. Tampoco nos han convencido las partes de que la corte, al fijar la compensación, cometiera manifiesto error. Véase *Pueblo* v. *Muñoz,* 69 D.P.R. 95.

 Alega, por último, la apelante que habiendo celebrado un contrato de arrendamiento con la Autoridad de Tierras, ésta se obligó en el mismo a venderle los retoños de la finca al mismo precio que la demandada se los vendió. Pide ser compensada por la pérdida sufrida. El contrato celebrado con la Autoridad expiraba en el año 1951, teniendo la Autoridad derecho a una prórroga hasta el año 1957.

Sostiene el apelado, con razón a nuestro juicio, que no se puede precisar, y de hecho no se hizo en el juicio, la cantidad de retoños que, de no haberse expropiado la finca, podrían existir en el año 1951 o en el 1957, susceptibles de ser readquiridos por la demandada. Es cierto que la apelante tenía el derecho a comprar de nuevo dichos retoños al terminar el contrato de arrendamiento, de no haberse expropiado

724

la finca. Empero, no se puede conceder daños especulativos e indeterminados a base de un derecho que se ha esfumado. Como se dijo en el caso de *People of Puerto Rico* v. *United States,* 132 F.2d 220, 222:

" . . . . . . . .

"No conocemos ningún medio racional por medio del cual poder determinar el valor de la posibilidad de que en algún momento indefinido en el futuro la tierra pudiera revertir al Pueblo de Puerto Rico. Todo lo que se puede hacer es aventurar una conjetura, y es elemental en ley, que los daños no pueden ser adjudicados por meras conjeturas. . . ."

*Debe confirmarse la sentencia apelada.*

El Juez Asociado Sr. Negrón Fernández no intervino.