EL ESTADO LIBRE ASOCIADO DE PUERTO RICO, representado por el GOBERNADOR DE PUERTO RICO, demandante y apelado, *v.* FAJARDO SUGAR COMPANY y CENTRAL VICTORIA, INC., demandada y apelante.

Número 11593.

*Sometido:* 9 de noviembre de 1955. *Resuelto:* 31 de mayo de 1956.

---

*Sifre & Ruiz Suria,* abogados de las apelantes; *Hon. Secretario de Justicia José Trías Monge* y *V. M. Sánchez Fernández, Procurador Auxiliar,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El Estado Libre Asociado de Puerto Rico instó acción para expropiar una parcela de 2.089 cuerdas de terreno sita en el barrio Martín González del Municipio de Carolina, propiedad de la Fajardo Sugar Company. La acción se instó a requerimiento de la Compañía de Fomento Industrial de Puerto Rico, "para adquirir para uso y beneficio de ésta la propiedad . . . . , todo ello bajo la autoridad de la Ley núm. 188 aprobada en 11 de mayo de 1942 ((1) pág. 935), según enmendada por la Ley núm. 99 aprobada en 18 de abril de 1952 ((1) pág. 189) y de la Ley General de Expropiación Forzosa . . . ."

En la demanda se alegó que el Administrador de Fomento Económico de Puerto Rico había estimado útil, necesario y conveniente para llevar a cabo los fines de la Compañía de Fomento Industrial de Puerto Rico, la adquisición de dicha propiedad y más específicamente para destinarla a la construcción de un edificio industrial; que su adquisición es de necesidad y utilidad pública ya que cumple con el propósito de la Compañía de Fomento Industrial de proveer nuevas fuentes de empleo y riqueza en el Estado Libre Asociado de Puerto Rico mediante su programa de industrialización.

La parte demandante depositó en la secretaría del tribunal a quo la cantidad de $6,419.68 que estimó era la justa y razonable compensación por la propiedad objeto de la acción, y a solicitud suya dicho tribunal dictó una resolución invistiéndole con el título de dominio y concediendo a la demandada un término de veinte días para hacerle entrega de la susodicha propiedad.

La demandada presentó luego una moción solicitando que

se dejara sin efecto dicha resolución y se le restituyera en la posesión de su parcela, alegando que de la faz de la demanda surgía que el fin para el cual se expropiaba su propiedad no era un fin público dentro del significado de las disposiciones constitucionales aplicables. Declarada sin lugar dicha moción, la demandada contestó negando los hechos esenciales de la demanda y alegando que la parcela expropiada formaba parte de una unidad industrial propiedad de la demandada y conocida como Central Victoria; que la demandada necesitaba la predicha parcela para el desarrollo y expansión de la referida unidad industrial, a saber, para construir ciertas facilidades; que el valor justo y razonable de la parcela expropiada era de $25,068 y que su expropiación le ocasionaba daños especiales montante a $8,950. Como defensas especiales alegó, (1) que la Ley núm. 99 de 18 de abril de 1952 es inconstitucional y nula por ser contraria a las disposiciones del Artículo 2 de la Sección 9 de la Constitución del Estado Libre Asociado de Puerto Rico, y (2) que el fin para el cual se expropia la propiedad en litigio no es un fin público.

Luego de un juicio en los méritos el tribunal a quo llegó a conclusiones de hecho y de derecho y dictó sentencia decretando: (1) que el título absoluto de dominio sobre la propiedad quedaba investido en el Estado Libre Asociado de Puerto Rico, (2) que la justa compensación a pagarse a la demandada es la suma de $8,356, (3) que Central Victoria, Inc., carecía de interés en el procedimiento, y (4) ordenando al demandante consignar en el tribunal la suma adicional de $1,936.32, más los intereses correspondientes, para completar el monto total de la justa compensación a ser pagada a la demandada.

En apelación la demandada Fajardo Sugar Company imputa al tribunal sentenciador la comisión de ocho errores.

■■ En el primer y séptimo señalamientos de error la apelante ataca la constitucionalidad de la Ley núm. 99 de 18 de abril de 1952. Invoca a este fin las Secciones 7 y 9 del Artículo II de la Constitución del Estado Libre Asociado de

Puerto Rico, preceptiva la primera de "[q]ue se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad", y la segunda de que "[n]o se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación de acuerdo con la forma provista por ley."([1]) Luego cita el art. 8 del Código Político (1 L.P.R.A., sec. 5) que confiere facultad al Gobierno de Puerto Rico para adquirir o autorizar a otros para adquirir títulos a bienes inmuebles o muebles para uso público, y el art. 282 del Código Civil (31 L.P.R.A. sec. 1113) que dispone igualmente que nadie podrá ser privado de su propiedad sino por autoridad competente y por causa justificada de utilidad pública.

Examinemos en primer lugar la Ley núm. 99, objeto de impugnación constitucional. Dicha ley contiene la siguiente:

"Exposición de Motivos

"La industrialización de Puerto Rico a su máxima capacidad y al ritmo de mayor aceleración posible, es parte importante de la política del Gobierno de Puerto Rico como medio efectivo de proveer nuevas fuentes de empleo y riqueza a su creciente población.

"A fin de lograr ese objetivo, se hace necesaria una adecuada y bien planeada distribución de plantas industriales a través de toda la Isla, y para ello se requieren facilidades para la adquisición de aquellos terrenos que la Junta de Planificación de Puerto Rico tenga a bien asignar o aprobar para fines industriales, con la rapidez que el ritmo adecuado del programa de desarrollo industrial demande, y mediante el pago por tales terrenos de un

([1]) La Sección 9 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, lee así:

"Sección 9.—No se tomará o perjudicará la propiedad privada para uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma provista por ley. No se aprobará ley alguna autorizando a expropiar imprentas, maquinarias o material dedicados a publicaciones de cualquier índole. Los edificios donde se encuentren instaladas sólo podrán expropiarse previa declaración judicial de necesidad y utilidad públicas mediante procedimientos que fijará la Ley, y sólo podrán tomarse antes de la declaración judicial, cuando se provea para la publicación un local adecuado en el cual pueda instalarse y continuar operando por un tiempo razonable."

precio razonable, no sujeto a especulación por parte de sus propietarios.

"Uno de los problemas más serios con que se viene confrontando la Compañía de Fomento Industrial de Puerto Rico en el desarrollo de su referido programa de industrialización, es precisamente la dificultad de adquirir mediante compra por negociación directa, los terrenos que necesita para ello, muchas veces debido a apatía, o negativa expresa de parte de los propietarios a vender, y otras veces por dificultades en convenir con ellos precios razonables por esos terrenos.

"La Asamblea Legislativa de Puerto Rico, consciente de la importancia que tiene para la vida económica de todo Puerto Rico el éxito del programa de industrialización intensificada auspiciada por el Gobierno a través de la Compañía de Fomento Industrial, desea declarar, como por la presente declara, que dicho programa es uno de primordial importancia en la reconstrucción económica de la Isla, y por lo tanto que participa de una naturaleza de utilidad y necesidad públicas.

"En tal virtud, y para hacer posible a la referida agencia gubernamental el cumplimiento de esa misión de gran interés público, con la rapidez, eficacia y eficiencia requeridas, la Asamblea Legislativa de Puerto Rico mediante esta ley se ve en la necesidad de conceder expresamente a la Compañía de Fomento Industrial de Puerto Rico, mediante las enmiendas pertinentes en la ley de su creación, las facultades que necesita para adquirir mediante expropiación forzosa aquellas propiedades que a su juicio sean requeridas para el pleno desarrollo de su programa de referencia."

Sobre la base de esta Exposición de Motivos, la Ley núm. 99, enmendó el art. 10 (²) de la Ley núm. 188 de 11 de mayo de 1942 que creó la Compañía de Fomento Industrial de Puerto Rico, en el sentido de enmendar el inciso (*g*) y adicionarle los nuevos incisos (*n*), (*o*) y (*p*). (23 L.P.R.A. sec. 278.) Por el inciso (*g*), según fuera enmendado, se faculta a la Compañía de Fomento Industrial, para adquirir por expropiación forzosa, entre otros medios, aquellos bienes que considere necesarios o convenientes para realizar los fines de la Compañía, pero con la limitación de que el procedimiento de

---

(²) Este artículo fué después renumerado como la sec. 8 por virtud de la Ley núm. 456, aprobada en 14 de mayo de 1952 ((1) pág. 951).

expropiación forzosa no se aplicará a la adquisición de edificaciones en las que estén siendo operados de buena fe empresas de naturaleza comercial, industrial o agrícola. Por el inciso (*n*) se confiere facultad al Gobernador de Puerto Rico para que en representación del Estado Libre Asociado y a solicitud de la Compañía, adquiera por expropiación forzosa, entre otros medios, los bienes necesarios y convenientes para llevar a cabo los propósitos y fines de la misma.

Por el inciso (*o*) "se declaran de utilidad pública todos los bienes muebles o inmuebles y todo derecho o interés sobre los mismos, que la Compañía considere necesario adquirir para llevar a cabo sus fines y éstos podrán ser expropiados por la Compañía o a solicitud y para uso y beneficio de ésta, por el Estado Libre Asociado de Puerto Rico, representado por su Gobernador, sin la previa declaración de utilidad pública provista en la sec. 2 de la Ley General de Expropiación Forzosa, . . ."

El inciso (*p*) dispone que los procedimientos de expropiación forzosa que se inicien por virtud de las disposiciones de los incisos (*g*), (*n*) y (*o*) ya mencionados, se tramitarán de acuerdo con las disposiciones de la Ley General de Expropiación Forzosa de marzo 12 de 1903 según ha sido enmendada.

La apelante dirige su ataque contra el poder de expropiación así concedido por la citada Ley núm. 99, a la Compañía de Fomento Industrial.[3] La médula de su contención es que bajo la citada Ley núm. 99, es posible que el poder de expropiación forzosa se ejercite para quitar la propiedad privada a una persona con el propósito de venderla a otra persona, o sea, a un interés privado. Al efecto arguye que para el fomento de la industrialización de Puerto Rico no es absolutamente necesario que la Compañía de Fomento Industrial disponga del poder de expropiación forzosa; que ello lo demuestra el hecho de que dicha Compañía estuvo funcionando

[3] La ley original que creó la Compañía de Fomento Industrial no le concedió facultad para adquirir bienes mediante el procedimiento de expropiación forzosa. (23 L.P.R.A. sec. 279.)

sin tener el derecho de expropiación forzosa por espacio de diez años y a la vez adquiriendo terrenos para fines industriales; que no es inconstitucional que la Compañía de Fomento compre terrenos, construya sobre los mismos plantas industriales y luego las venda, arriende o disponga de ellas, a favor de terceras personas privadas; que lo que sí es contrario a la Constitución es que se ejercite el poder de expropiación forzosa para ello, o sea, el que obligatoriamente se le tome propiedad particular a un ciudadano para dársele a otros sin que exista la necesidad absoluta de ello.

Sin embargo, la apelante está conteste en que el significado del término "uso público", generalmente se ha considerado, en relación con el poder de dominio eminente, como algo imposible de definir con precisión. (2 Nichols *on Eminent Domain*, sec. 7.2 (1) pág. 429); que en la interpretación de dicho término, la doctrina más liberal le da un alcance amplio, considerándolo como equivalente a "beneficio público"; [4] pero sostiene que esta doctrina es una a aplicarse estrictamente a ciertos y determinados tipos de casos, citando al efecto los enumerados en Nichols *on Eminent Domain*. [5] "Existen, a nuestro juicio—dice la apelante—además de los casos seña-

---

[4] En Puerto Rico se ha seguido la doctrina liberal que acepta el significado del término "uso público" como sinónimo de "beneficio público" *McCormick* v. *Marrero, Juez,* 64 D.P.R. 260; *People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F.2d 316, *cert.* denegado en 329 U. S. 772; *Pueblo* v. *Saldaña,* 69 D.P.R. 711.

[5] La cita es la siguiente:

"Los casos citados en las secciones anteriores ampliamente sostienen la regla anunciada por el Juez Cooley de que no es legislación legítima el ayudar una forma de empresa privada a expensa de otras, pero las excepciones a la regla son tan numerosas que muchos han dudado de la existencia de la misma. *Sin embargo, un estudio de la historia de las excepciones y de las condiciones que le han dado razón de ser, conserva la fe en la existencia de la regla y sus aplicaciones bajo condiciones normales, sin alterar.*

"La manufactura, comercio y la agricultura pueden y ordinariamente siguen su curso sin la ayuda del dominio eminente o de otra franquicia alguna de parte del estado; pero existen ciertas formas de ayuda al negocio privado y ciertos métodos de mejorar terrenos privados que han sido autorizados por ley desde la colonización de este país y que, aunque no envuelven la toma y ocupación por una persona de la totalidad de la propiedad de otro para establecer allí su lugar de trabajo, sin embargo interfieren con

lados en la anterior cita de Nichols otros en que la doctrina de "beneficio público" podría invocarse como la eliminación de arrabales, el control de inundaciones, etc., pero todos ellos cuando el poder de dominio eminente, por las circunstancias especiales que medien sea el único medio de lograr el beneficio público perseguido. Esa es la distinción que vemos entre, por ejemplo, el caso de *McCormick* v. *Marrero, Juez*, 64 D.P.R. 260, . . . y el caso que nos ocupa." Luego afirma la apelante que igual distinción existe entre el presente caso y el de *People of Puerto Rico* v. *Eastern Sugar Associates*, 156 F.2d 316.

No tiene razón. El objetivo principal de la Ley núm. 99 de 1952, es la industrialización de Puerto Rico a su máxima capacidad y al ritmo de mayor aceleración, con el fin de proveer nuevas fuentes de empleo y riqueza a su creciente población. La Legislatura declaró que a fin de lograr ese objetivo, se hacía necesaria una adecuada y bien planeada distribución de plantas industriales a través de toda la Isla y que para ello se requerían facilidades para la adquisición de aquellos terrenos que la Junta de Planificación de Puerto Rico tuviera

los derechos de propiedad privada en una forma no ordinariamente justificada excepto como un ejercicio de dominio eminente, y aún por medio de la sanción de la costumbre establecida por largo tiempo y sin oposición, han sido tolerados hasta el presente.

"*.       .       .       .       .       .       .       .       .*

"Bien sea el uso basado en razones históricas o condiciones locales anormales, como se anunció en la sección anterior y bien sea en ayuda de la manufactura, comercio o agricultura, existen ciertos usos bien definidos, privados en su carácter esencial, los cuales en el transcurso del tiempo han sido reconocidos como objetos propios en la ayuda de los cuales el poder de dominio eminente puede ser empleado.

"Esos usos privados incluyen lo siguiente:

"(a) Riego
"(b) Drenaje
"(c) Reclamación de terreno pantanoso
"(d) Molinos y represas
"(e) Minas y explotación de minas
"(f) Explotación de bosques y corte y transporte de madera
"(g) Carreteras privadas
"(h) Saneamiento de título dudoso."
(2 Nichols on *Eminent Domain*, sec. 7.61 y sec. 7.62, págs. 565 a 568.)

a bien asignar o aprobar para fines industriales. (Exposición de Motivos de la Ley núm. 99.) A fin de obviar las dificultades que entorpecían el desarrollo del programa de industrialización, y considerándolo de vital importancia para la vida económica de todo Puerto Rico, la Asamblea Legislativa declaró "que dicho programa es uno de primordial importancia en la reconstrucción económica de la Isla, y por lo tanto que participa de una naturaleza de utilidad y necesidad públicas". En su consecuencia facultó a la Compañía de Fomento Industrial para adquirir bienes mediante expropiación forzosa para el pleno desarrollo de sus actividades dentro de su programa de referencia.

Considerando el amplio margen que tiene la Legislatura para decir qué expropiaciones son para uso público y el derecho o deferencia que tiene su decisión hasta tanto se demuestre que envuelve una imposibilidad, cosa que aquí no ha hecho la apelante, debemos concluir que la Ley núm. 99 no viola nuestra Constitución. No debe olvidarse que cuando la Asamblea Constituyente usó en la Sección 9 del Artículo 2 de nuestra Constitución el término "uso público", que es el mismo término usado en la Constitución de los Estados Unidos y en nuestra anterior Carta Orgánica en relación con el poder de expropiación, lo hizo para conservar el significado que a dicho término habían dado las decisiones judiciales. Véase Diario de Sesiones de la Convención Constituyente, pág. 588, Sesión de enero 4 de 1952.(⁶) Pero hay más. La Convención Constituyente interpretó que la citada Sección 9 del Artículo 2 no entorpecía en forma alguna el programa de industrialización de Puerto Rico, bien su desarrollo fuera por vía de iniciativa privada o bien por vía de participación por el Estado.(⁷)

---

(⁶) Para esta fecha ya se habían emitido las decisiones en los casos de *McCormick* v. *Marrero, Juez,* supra; *People of Puerto Rico* v. *Eastern Sugar Associates,* supra, y *Pueblo* v. *Saldaña,* supra.

(⁷) La Comisión que estudió y redactó la Carta de Derechos sometió a la consideración de la Asamblea Constituyente la Sección 9 del Artículo 2, que leía de la manera siguiente:

La apelante admite, y en esto estamos conformes, que el programa de industrialización que desarrolla el Estado a través de la Compañía de Fomento Industrial "es un programa de gran magnitud y de un gran beneficio público para la Isla". El hecho de que en el desarrollo de dicho programa reciban beneficio o utilidad aquellas personas o entidades privadas a quienes se les venda o arriende las propiedades expropiadas, es uno puramente incidental al fin público que persigue la ley. No puede sostenerse que la creencia de la Legislatura de Puerto Rico de que la falta de riqueza y de empleo constituyen un serio problema económico y social sea arbitraria, ni tampoco puede negarse que la creación de nuevas industrias y su adecuada distribución en toda la Isla envuelven medios razonablemente calculados para afrontar el problema.

En cuanto al punto en discusión es difícil hacer una distinción entre este caso y los de *McCormick* v. *Marrero*, supra; *People of Puerto Rico* v. *Eastern Sugar Associates*, supra, y *Pueblo* v. *Saldaña*, supra. En el caso de *Eastern Sugar Associates* se rechazó el argumento empleado por los demanda-

---

"No se tomará o perjudicará la propiedad privada por razón de uso público a no ser mediante el pago de una justa compensación y de acuerdo con la forma prevista por la Ley. No se aprobará ley alguna autorizando a expropiar imprentas, maquinarias o material dedicado a publicaciones de cualquier índole. Los edificios donde se encuentren instalados sólo podrán expropiarse previa declaración judicial de necesidad y utilidad pública mediante procedimientos que fijará la ley y sólo podrá tomarse antes de la declaración judicial cuando se ponga a disposición de la publicación un local adecuado en el cual pueda instalarse y continuar operando en tiempo razonable. Las reglas para establecer contribuciones serán uniformes en Puerto Rico. Sólo se dispondrá de los fondos y propiedades públicas para fines públicos y para el mantenimiento y sostenimiento de las instituciones de Gobierno. *Y no se considerarán fines públicos ni instituciones del gobierno aquellos que no estén bajo la autoridad e intervención del gobierno.* No se aprobarán leyes menoscabando las obligaciones contractuales." Diario de Sesiones de la Convención Constituyente de Puerto Rico, pág. 587. (Bastardillas nuestras.)

La disposición que decía "no se considerarán fines públicos ni instituciones del gobierno aquéllos que no estén bajo la autoridad o intervención del mismo", fué eliminada a propuesta del Presidente de dicha Comisión, quien al solicitar la enmienda, se expresó en lo pertinente como sigue: "Aclarada ya esta situación nos parece que huelga continuar esta adicional cláusula y con su eliminación queda desembarazado el gobierno y la legis-

dos de "que se niega el debido procedimiento porque el propósito de expropiar las tierras de los apelados es solamente para venderlas o arrendarlas a otros para que las usen en vez de hacerlo para uso del público en general". En dicho caso se dijo:

"Se arguye que el debido proceso de ley es negado porque el propósito de tomar la tierra de las apeladas es solamente para venderla o arrendarla a otros para su uso personal y no para uso por el público. Este argumento se ha presentado varias veces ante la Corte Suprema de los Estados Unidos en casos de esta índole y todas las veces ha sido rechazado. En *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 162, 17 S. Ct. 56, 64, 41 L. Ed. 369, decidido en 1896, la Corte Suprema consideró ampliamente el argumento y a la luz de dicha consideración anunció que 'No es necesario, para que el uso sea público, que todo residente en un distrito tenga el derecho al uso del agua.' Fué considerado y rechazado una vez más en el caso de *Clark* v. *Nash,* 1905, 198 U. S. 361, 367, 25 S. Ct. 676, 49 L. Ed. 1085, 4 Ann. Cas. 1171 *et seq.,* y en el caso de *Strickley* v. *Highland Boy Mining Co.,* 1906, 200 U. S. 527, 531, 26 S. Ct. 301, 50 L. Ed. 581, 4 Ann. Cas. 1174; y en el 1916 en el caso de *Mt. Vernon Cotton Co.* v. *Alabama Power Co.,* 240 U. S. 30, 32, 36 S. Ct. 234,

---

latura para tomar aquellas medidas que fueren menester en la realización de los fines públicos en cooperación o en desarrollo de la industria, etc." (Diario de Sesiones de la Comisión Constituyente, página 587, tercera columna.) El delegado Trías Monge interpeló al Presidente de esa Comisión en la siguiente forma:

"P.—¿Específicamente impide en forma alguna este lenguaje tal como queda enmendado en su proposición al desarrollo de programas específicamente industrias, la Compañía de Fomento Industrial de, Puerto Rico, alguna fase de los mismos?

"Resp.—En ninguna manera queda esto afectado y por el contrario queremos dejar claramente consignado que uno de los motivos de la eliminación es para que no haya duda en torno a este particular.

"P.—¿Permite igualmente el desarrollo de programas de inversión y de fomento de inversiones del Banco Gubernamental de Puerto Rico?

"Resp.—Desde luego que sí.

"P.—¿No afecta en forma alguna las actividades de desarrollo industrial de Puerto Rico, bien vía iniciativa privada o bien vía a, participación del estado?

"Resp.—En ninguna manera, es tal cosa el propósito."

(Diario de Sesiones de la Convención Constituyente de Puerto Rico, pág. 587—Columna 3ra.)

236, 60 L. Ed. 507, el Juez Holmes expresando el sentir unánime de la Corte dijo : 'Lo inadecuado del uso por el público en general está establecido como norma universal.' Más tarde en 1923 en *Rindge Co.* v. *Los Angeles,* supra, página 707 de 262 U. S., 43 S. Ct. 692, 67 L. Ed. 1186, la Corte Suprema dijo: 'No es esencial que toda la comunidad, ni aún una parte considerable de la misma disfrute o participe directamente en mejoramiento alguno, para que constituya un uso público.'

"No empece lo anterior no podemos decir, sin embargo, que el quitarle una propiedad a una persona con el propósito de transferirla a otra, sin más, cumpla con el debido proceso de ley. Alguna ventaja o beneficio público debe resultar de la transferencia, y una mera ganancia financiera para aquél que adquiere la propiedad no es suficiente, ya que la Corte Suprema ha insinuado que el poder de dominio eminente no puede usarlo la autoridad expropiante en ayuda de 'especulaciones en terreno'. *Brown* v. *United States,* 263 U. S. 78, 84, 44 S. Ct. 92, 94, 68 L. Ed. 171.

"Las legislaturas locales tienen no obstante, amplio margen al decidir qué expropiaciones son para uso público. Esto está definitivamente establecido por los casos surgidos bajo la Enmienda Décimocuarta ya citada y por muchos otros. En primer término, el poder de expropiación de un estado no tiene que estar fundado necesariamente en que la expropiación se considere necesaria para la salud pública, sino que puede ser ejercitado si la expropiación 'fuere esencial o material para la prosperidad de la comunidad'. (Citas.) Y en segundo término, una legislatura local, por su conocimiento íntimo de las condiciones locales, tiene gran latitud en determinar qué usos de la tierra son conducentes a la prosperidad comunal. El amplio margen permitido a la legislatura estadual en este respecto se enfatiza en *Clark* v. *Nash,* supra, y en *Cincinnati* v. *Vester,* 281 U. S. 439, 446, 50 S. Ct. 360, 362, 74 L. Ed. 950, decidido en 1930, la Corte Suprema, citando muchos casos, dijo que aunque, la cuestión de lo que es un uso público es una judicial 'Al decidir tal cuestión, la Corte tiene el apropiado miramiento hacia la diversidad de condiciones locales y considera con gran respeto las declaraciones legislativas y en particular el criterio de las cortes estatales en cuanto a los usos que se consideran públicos a la luz de las exigencias locales'. De hecho en *Old Dominion Co.* v. *United States,* 269 U. S. 55, 66, 46 S Ct. 39, 40, 70 L. Ed. 162, citado con aprobación en *United States, ex rel. Tennessee Valley Authority* v. *Welch,* supra, la

Corte Suprema dijo que una decisión legislativa en el sentido de que un uso determinado es público 'tiene derecho o deferencia hasta tanto se demuestre que envuelve una imposibilidad'." (*People of Puerto Rico* v. *Eastern Sugar Associates,* 156 F.2d 316.)

En los señalamientos segundo y sexto se imputa al tribunal a quo haber cometido error al apreciar la prueba y declarar que la expropiación en este caso es para un uso o fin público.

Se repite aquí el argumento de que el uso para el cual se expropia la parcela en litigio es un uso privado porque la Compañía de Fomento Industrial no habrá de hacer uso directo de dicha parcela, ni del edificio construído sobre la misma sino que quien la habrá de usar directamente es el industrial a quien se le venda o arriende para establecer una industria. Creemos que este argumento ya ha sido contestado. Sin embargo, la apelante insiste en que bajo la doctrina más liberal de "beneficio público" ello no constituye "uso público" a menos que sea absolutamente necesario y que en este caso el Estado debió probar, y no lo hizo, que no pudo conseguir otros terrenos por compra directa.

No tiene razón. La Legislatura declaró de utilidad pública los bienes que la Compañía de Fomento considere necesario adquirir para llevar a cabo sus fines. El derecho a declarar qué uso se considerará público, corresponde primariamente a la legislatura. *United States ex rel. T. V. A.* v. *Welch,* 327 U. S. 546, 551 y 552. La presunción es que un uso es público si así ha sido declarado por la Legislatura y la cuestión sometida a nuestra consideración es si la Legislatura pudo razonablemente considerar el uso como público, y ya hemos contestado en la afirmativa. Sabemos que en última instancia la decisión de si determinado uso es público corresponde a los tribunales. Esta determinación se hará considerando las circunstancias especiales de cada caso y en vista de las que en éste concurren tenemos que concluir que el uso para el cual fué expropiada la parcela del apelante es un uso

público.    La Legislatura ha creído que la industrialización de la Isla habrá de remediar si no en todo en gran parte el problema económico de Puerto Rico.    Para establecer las industrias creó la Compañía de Fomento Industrial y le confirió la facultad extraordinaria de expropiación.    Es cierto que dicha compañía adquiere terrenos y fabrica sobre ellos plantas industriales que luego vende o arrienda a personas o entidades privadas; pero según declaró el jefe interino de dicha compañía, el propósito principal no es el beneficio que pueda recibir la empresa como empresa particular sino el beneficio que se deriva de la implantación de la industria en la economía general del país y que el esfuerzo que hace la Compañía de Fomento para dar facilidades industriales obedece a que de no hacerlo no tendrían solución los problemas imperantes económico-sociales.

Para que constituya un uso público dentro de la ley de dominio eminente no es esencial que toda la comunidad perciba directamente o goce de todo el beneficio y para hacer la determinación de si el uso es público se considerarán no solamente las necesidades presentes del público sino también aquéllas que razonablemente se pueden anticipar para el futuro.    *Rindge Co.* v. *Los Angeles County*, 262 U. S. 700, 707.    En el desarrollo de un proyecto público de tan vasto alcance y consecuencias como lo es el programa de industrialización de la Isla de Puerto Rico, (8) la expropiación de aquellos

---

(8) En relación con el programa de industrialización, véase además de la Ley que creó la Compañía de Fomento Industrial, la Ley núm. 381 de mayo 8 de 1951 asignando a dicha Compañía la cantidad de $400,000 para el pago de ayudas e incentivos a empresas industriales privadas; la Ley núm. 382 de 9 de mayo de 1951 que autoriza a los municipios y al Gobierno de la Capital a adquirir propiedad inmueble para llevar a cabo la construcción de edificios para industrias y arrendarlos y venderlos a industriales sin necesidad de cumplir con las disposiciones de la Ley Municipal; la Ley núm. 377 aprobada en 8 de mayo de 1951 que asignó a la Compañía de Fomento Industrial de Puerto Rico la suma de $8,300,000 para llevar a cabo su programa de industrialización.    Una cantidad igual fué asignada por la Ley núm. 374 aprobada en 10 de mayo de 1952; la Ley núm. 184 aprobada en 13 de mayo de 1948 según fué enmendada por la Ley núm. 243 de 8 de mayo de 1950, proporcionó el incentivo de la exención temporal de contribuciones a industrias nuevas.

terrenos necesarios para llevarlo a efecto, aunque su uso inmediato sea un uso privado, no justificaría la decisión de que tales expropiaciones son para uso privado.

"Sin embargo, un beneficio público ulterior puede justificar el tomar propiedad privada comparativamente insignificante para lo que, en su propósito inmediato, es un uso privado. Donde, a pesar de estar unidos usos públicos y privados, el tomarla puede ayudar al establecimiento de un proyecto público, las cortes están prestas a ignorar el elemento privado como puramente incidental; y de cualquier modo, donde tales usos no están tan entrelazados que sean inseparables, el estatuto que autoriza el tomarla deberá sostenerse." Nichols *on Eminent Domain*, Vol. 2, sec. 7.2222[4].

Estos errores tampoco fueron cometidos.

■ En el tercer señalamiento la apelante sostiene que el demandante en este caso no cumplió con los preceptos de la Ley sobre la cual se basó la expropiación. Estos preceptos son los incisos (*n*) y (*o*) del art. 10, hoy art. 8 de la Ley de la Compañía Industrial de Puerto Rico. Su argumento es que como la parcela expropiada será vendida por la Compañía de Fomento al costo o arrendada a un industrial, quien será el que derive los beneficios, la expropiación no se ha hecho para *uso* y *beneficio* de dicha Compañía según lo requiere el citado inciso (*n*). Está equivocada. El susodicho inciso (*n*) dispone que cuando a juicio de la Compañía de Fomento fuere necesario tomar posesión inmediata de los bienes que han de ser expropiados, la Compañía deberá solicitar del Gobernador de Puerto Rico que en representación del Pueblo de Puerto Rico, adquiera, y éste tendrá facultad para adquirir por compra, expropiación o cualquier otro medio legal "para uso y beneficio de la Compañía, los bienes y derechos reales necesarios y convenientes para llevar a cabo los propósitos y fines de la misma." Estos propósitos y fines están consignados en la siguiente declaración legislativa:

"Es la intención de la Asamblea Legislativa que las actividades de la Compañía en los casos antes mencionados, así como en las actividades a que se refieren los artículos subsiguientes, bene-

ficien a los habitantes de Puerto Rico por medio de la revelación y desarrollo en el mayor grado posible de los recursos económicos y humanos de la Isla como parte del plan de reconstrucción económica en beneficio general de El Pueblo de Puerto Rico que éste pone en práctica a través de la Compañía de Fomento Industrial." Art. 3 de la Ley de la Compañía de Fomento Industrial de Puerto Rico." (23 L.P.R.A. sec. 273.)

Como bien arguye el apelado, si interpretáramos la ley como lo hace la demandada apelante, destruiríamos los propósitos para los cuales fué creada la Compañía de Fomento. El uso y beneficio a que se refiere la ley es aquel destino que la Compañía da a las fincas expropiadas, para hacer viable el desarrollo del programa de industrialización, que tuvo como objeto principal la reconstrucción económica en beneficio general de Puerto Rico. De ahí que en la Declaración Para la Adquisición y Entrega Material de Propiedad, firmada por el Gobernador, se hizo constar lo siguiente:

"1. Que la propiedad objeto del presente procedimiento de expropiación forzosa se adquiere por El Estado Libre Asociado de Puerto Rico, a solicitud y para uso y beneficio de la Compañía de Fomento Industrial de Puerto Rico, a los fines de que ésta lleve a cabo los propósitos para destinarla en la construcción de un edificio industrial en el Bo. Martín González de Carolina, que ha de proveer nuevas fuentes de empleo y riqueza a El Estado Libre Asociado de Puerto Rico mediante su programa de industrialización, . . . ."

El error señalado no fué cometido.

■ La apelante señala como cuarto error que no se le permitió probar los daños especiales alegados en la contestación. En el hecho sexto de dicha contestación se alega que la propiedad objeto de la expropiación forma parte de una unidad industrial propiedad de la demandada y que la necesitaba para ciertas facilidades y que con motivo de la expropiación habría de construirlas en otro sitio menos adecuado, lo que le costaría $8,950, y solicita daños por esta suma.

Su contención era, según el testimonio prestado por su testigo Ramón Ramos, Jr., que la apelante tenía el propósito de dedicar la parcela expropiada a área de estacionamiento

para "trucks", debido a que había aumentado el número de colonos y como consecuencia el movimiento de "trucks"; que la parcela expropiada formaba parte del "batey" de la Central y que lógicamente era el sitio más conveniente y menos costoso para establecer dicha área de estacionamiento.(⁹)

Después de declarar ampliamente sobre esta cuestión a preguntas de una y otra parte, el tribunal a quo, ordenó la eliminación de su testimonio por entender que el daño reclamado era especulativo y por tanto no compensable.(¹⁰)

Dijo el tribunal:

"Hon. Juez:—

"Bueno, luego de oída la declaración del testigo la Corte va a resolver la cuestión definitivamente. Se trata según la propia manifestación del testigo de planes a realizarse en el futuro para aumentar la eficiencia del tránsito. La expropiación en este caso se hizo en octubre 17 del 52, o sea luego de haber terminado la zafra del año 1952. Tengo conocimiento judicial de que, se terminó la zafra del 53, no es eso, de enero a junio de 1953, 4 meses después de haberse expropiado la parcela. La contingencia que prevaleció para que haya este cambio ocurrió cuando se vendió o se desmanteló la Central San José y por eso aumentó el tránsito, aumentó el número de 'trucks' de Central Victoria porque la Central Victoria absorbió lo que San José dejó de moler. Eso fué en la zafra del 53, ya expropiada la parcela. De modo que no vemos en qué forma pueda afectar el valor de la parcela y pueda haberle ocasionado daños reales a la demandada la expropiación de esta parcela en el año 1952 cuando todavía no se había establecido que había necesidad de dedicar esa área a estacionamiento. Por tal razón la Corte elimina la declaración

---

(⁹) La prueba demostró que a la fecha de la expropiación, Nicolás Iturregui poseía en arrendamiento la parcela expropiada y la tenía sembrada de cañas de azúcar.

(¹⁰) Sin embargo, lo que aparentemente hizo el tribunal a quo fué resolver que a base de la prueba presentada los daños especiales reclamados no eran compensables. Así se explica que al resolver el caso concluyera: "Se probó, además, que la parte demandada es dueña de otros terrenos, más cercanos a la plaza de la factoría y más propicios para ampliar ésta en el futuro, y si fuere necesario.

"Como cuestión de hecho, resolvemos que ni en la fecha de la adquisición, ni aún en la fecha en que se celebró el juicio, dicha ampliación era necesaria, y por tanto, la parte demandada no sufrió daño alguno por el concepto que alegara y tratara de probar." (T. A., pág. 33.)

del testigo y ordena la eliminación de la alegación sexta de la contestación por entender que esos daños en ninguna forma, ni de hecho ni de derecho son compensables."

Un cuidadoso examen del récord nos convence de que el tribunal a quo no erró al denegar los daños especiales reclamados. *Maynard* v. *Nemaha Valley Drainage Dist.*, 94 Neb. 610, 143 N. W. 927; *Olson* v. *United States*, 292 U. S. 246; *Chicago B. & Q. R. Co.* v. *Chicago*, 166 U. S. 226.

En el quinto señalamiento se imputa al tribunal sentenciador haber cometido error de derecho al basar parte de sus conclusiones de hecho en información obtenida en la inspección ocular sin que se hubiera levantado un acta de dicha inspección ni llevado un récord de la misma.

La susodicha información se refería al número de vehículos pesados de motor que acudían diariamente a la Central Victoria a descargar cañas de azúcar, y la misma fué suministrada al Juez del tribunal a quo por el testigo de la apelante, Ramón Ramos, Jr., Administrador de dicha Central, durante la inspección ocular y en presencia de los abogados de las partes.

Al levantar esta cuestión por primera vez ante nos, la apelante ha dejado de demostrarnos que el error, de haberse cometido, le fuera perjudicial. Bajo la doctrina de los casos de *Lampón* v. *Línea Romero*, 60 D.P.R. 212 y *Pepín* v. *Ready Mix Concrete*, 70 D.P.R. 758, debemos desestimar dicho error.

El tribunal a quo concluyó que el justo valor en el mercado de la parcela expropiada era de $4,000 por cuerda. En su último señalamiento de error la apelante ataca esta conclusión arguyendo que la prueba fué apreciada erróneamente.

El error no fué cometido. La prueba sostiene la conclusión atacada sobre el justo valor de la parcela expropiada. En su consecuencia, no la alteraremos en apelación. *Pueblo* v. *Sucn. Quiñones*, 71 D.P.R. 261.

*Por las razones expuestas, se confirma la sentencia apelada.*

El Juez Asociado Sr. Sifre no intervino.